The next case on the calendar is Lee versus Barr, but that's been submitted on the briefs and record. So our next case for argument is Bernal-Gonzalez versus Barr. Alan Diamante Good morning. May it please the Court, Alan Diamante representing petitioner Jennifer Bernal-Gonzalez. I'd like to reserve five minutes, if I may, for rebuttal, if necessary. In this particular case, the FARC targeted Ms. Bernal's family for over 30 years. The BIA and IJ erred in finding that Ms. Bernal was targeted for extortion purposes related to a clothing business rather than her family membership. When additional documentation was submitted to the BIA, it was revealed through evidence that the petitioner's family had been targeted by FARC for a period of time spanning over 30 years. The petitioner's father was murdered for opposing the FARC being a member of an organization called the Patriotic Union. Her uncles were murdered as well. Her grandmother was murdered. The period of time of extortion was when the petitioner's mother had a business, and the extortion period occurred pretty much about one year. So we're looking at about 30 years, about one year. And I would direct the Court's attention to the record on pages 75 and 83. We can see the affidavits that were laid out by the petitioner and her mother. We're pretty familiar with the record, so where's their error? What's the basis to grant the relief? Yes. Well, we believe that the BIA erred in finding that there was no prejudice by the ineffective assistance of counsel. Counsel should have presented documentation showing that there was an imputed political opinion argument here and a political opinion argument weaved with the family persecution. Is there anything in the record that suggests that your client advised prior counsel of these facts? I do not believe that information is in the record because I don't think the information was elicited from counsel. She spent very little time having dialogue with counsel, spoke to an assistant, and was not advised as to what information had to be provided. She testified before the IJ, before the immigration judge, and was asked open-ended questions and never mentioned any of this information about political persecution of family members. She talked about extortion. What I'm struggling with is why this information was not brought forward before the immigration judge. Because what the attorney did, and this is the issue, is that the attorney, her representative at the time, did not provide the information to the Court. She didn't even indicate that there was a political persecution aspect to the case. Your client certainly did, but never mentioned it when asked open-ended questions about why you should have asylum while you're being persecuted. She didn't know what the asylum laws are. She had to rely on her attorney. An attorney indicated to the Court that this was a family persecution case. So she's following the lead of her attorney. The information was not elicited from her from the Court or from her attorney. Open-ended questions did not go specific to the issue of political persecution because that wasn't even mentioned to the Court, neither in direct. And there was no additional testimony or information provided by counsel for the petitioner. After the hearing, the petitioner went to new counsel and provided this information to new counsel, indicating that the attorney didn't even prepare her. She spent, I believe on the record in the case, about 15 minutes with her attorney, and the attorney would tell her not to worry. So what alerted her after the first hearing and before she met with the next counsel that this was information that was important? By having dialogue with new counsel, she was able to explain the history of her case. The history of the case did not make it to the Court record, and that is the problem here. Nor did the theory make it to the Court record. And that was the duty of the attorney, to provide that to the Court. And yes, questions were asked, but not all the proper questions were asked. So we are dealing with the case... And you were the second attorney. That's correct. I was the attorney that the petitioner indicated that she had this long history of persecution. And severe persecution, murders of her family members, multiple family members, death threats revealed to other family members. Well, they didn't want to pay. That was one little period when the mother had her business, and this was just another indication of her opposition to the FARC. She didn't want to pay. It was bad enough that they murdered so many family members, her husband and her mother. They didn't want to pay either. Well, the record does indicate that they were subject to extortion. They were just opposing. The father and the uncles and the grandmother opposed the FARC, and that was known by the FARC. Not an individual. We're talking about an organization, a military organization, guerrilla group, that is very large, very sophisticated in Colombia. But I think the problem is that it's not a case in which she was never asked, why was your family persecuted? She was asked that several times and opened the question, why? And her response was never because we politically opposed FARC. Her response was, we refuse to pay extortion money. So how does this become an election consensus? What you focused on is, I understand your argument to be focusing on the ineffective assistance of counsel and the hearing before the IJ, the immigration judge. So focusing on that, how did the prior counsel commit error if she never told him about this? Or was she prejudiced by ineffective assistance if she was given several opportunities to bring it to the immigration judge's attention and she just didn't do it? That's correct. So how was she prejudiced by ineffective assistance of counsel because she was given multiple opportunities to answer open-ended questions before the immigration judge? She just was not prepared. She didn't understand that it was significant that this organization had been persecuting her family for reasons other than money. Well, when preparing the case with her attorney, the focus was on the extortion. The attorney actually said, this is an extortion case. So she's following the lead of her counsel. She doesn't know the rules and the laws. Let me ask you this. When she left, when the mother left Columbia, how old was the petitioner? Well, the petitioner was born in the mid-80s. And the mother left Columbia in 2007. So I would assume she's in her 30s. I don't know. I'm not doing well in math here. When the mother left? She was one years old when the father and the grandmother were murdered. And that was in the late 86, I believe. And then her mother comes to the United States in 2007 or 2008, I believe. So we're talking about a... What's her mother's status? Her mother's status is she's in proceedings at this time. And she's also fighting her case. What differed between... Let me see if I remember the dates correctly. Your client came to the United States in 2010 and applied for asylum in 2013. It was a three-year period, so it was untimely. So what happened that would allow us to find there were changed circumstances to excuse the untimely filing of the asylum petition? Okay. Just to revert back to that, the answer is that she was born in 1986. And her mother was fleas in 2008. So that's when she came in. And in answering your question, well, she comes to the United States. The petitioner comes to the United States, is not sure if she's going to stay in the United States. And her uncle is threatened and murdered, and her stepfather is threatened. And this is after the fact. So this was within the period of changed circumstances. And that wasn't even provided by counsel. This is after multiple murders of family members and an attack on her personally. So all of this persecution had occurred well before she came to the United States. So these additional attacks, how does that significantly change the circumstances to excuse the untimely filing? Because she wasn't planning on applying for asylum when she came to this country. She was planning on just cooling off here for a period and going back. And then these new circumstances caused her to make the decision to stay in the United States. And there were significant additional murder of another family member, a family member that was threatened. And the extortion, like I said, the extortion only occurred within a small period of time, about a year. But the mother was involved in an organization, a cooperative political group. So she revealed her opposition to the FARC. The FARC was policing the area. Ms. Bernal was stabbed not too long thereafter. Her mother gave up the business. They didn't ask Ms. Bernal to pay up when they stabbed her. So the extortion wasn't even a factor. Was she a visa overstay? How was it that she came to the United States? The petitioner entered unlawfully. All right. Thank you. I'll give you a minute for rebuttal. Thank you very much. I'm going to start by not exhausting it with the board below. Starting with the one year asylum bar Judge Bade raised, I would say that I agree that there hasn't been a showing of changed circumstances with respect to what her claim was. Why isn't the killing of the uncle a pretty significant event? Well, I mean, it's a significant event in somebody's family that that happened. But the question for the court and the immigration judge below was whether that was a material circumstance that changed the nature of her asylum claim or changed the reason why. It had been a number of years that the other family members had been subject to persecution and misdeeds by the, you know, terrible things by the FARC. So this goes to a very important issue, Your Honor, which is what was the motivation of the FARC? Was it to extort money, as the immigration judge and the board found? Or was there anything having to do with the family or a political opinion? Couldn't it reasonably have been both? The mother had been involved in a community organization that apparently opposed the FARC. That's true, but there's no indication in the record that the FARC knew that the daughter was the person of this mother who attended that or that the FARC imputed a political opinion to the daughter. There's just no evidence in the record of that with respect to political opinion. And that's why. So to get back just to the one year asylum bar, the immigration judge looked at this and says there's nothing materially different here. No materially different circumstances to allow this exception to the one year asylum bar. But regardless, as the court is aware, the immigration judge still looked at whether or not the petitioner deserved asylum, notwithstanding the fact that she did not comply with the one year bar. But as far as this court's decision, the court could make the decision that, yeah, you're correct. She did not have a material exception to the one year bar and that's it for asylum. But if this court goes the further step also and looks at the asylum claim, it should still find that there's substantial evidence in the record to support. But they presented this case as an extortion case. They presented it. Who presented it as an extortion case? Oh, the counsel below. Yeah. Well, they still indicated that that the person deserved the petitioner deserved asylum as a result of these actions that were occurring. But the question for this court is whether or not. I don't think extortion is one of the grounds. I mean, it has to be tied to political opinion or something. It has to be tied to one of the five enumerated grounds under the INA. They made that argument to the immigration judge. The immigration judge looked at this and the immigration judge looked at it under political opinion, looked at it under social group. So these things were just because it was presented as an extortion case. If you want to say that, I'm not sure I agree with that presumption, but if you feel that way. I didn't say it was a presumption. I just said that's the way that's what it looks like. But the immigration judge nevertheless took a holistic view of the case and said, I'm going to analyze this to see whether or not this persecution occurred because she was a member of a particular social group or whether it occurred because she had a political opinion or a political opinion that was imputed towards her. And the immigration judge did an analysis of that and found that, no, in fact, the only thing that was motivating the FARC, the only thing that was motivating the FARC, and this is a substantial evidence standard review on this issue. In his reply brief, my opponent indicated that this is a mixed question of law and fact. When it comes to determining the motive of the persecutor, that is substantial evidence review. And I would submit to the court the case of Lugvarsen v. Lynch, 849F3800, which clearly says that. So the board looked at this and said, we don't see anything tied to an enumerated ground here. They looked at it both in the social group context and in the political opinion context and said, not only is there not a central reason here, there's nothing tying this to the fact that she was a member of a particular social group. And in fact, the testimony that the court discussed a little bit of it before, but particularly point the court to pages 220 to 226 of the record, as well as 295 to 297 and 83 to 85 of the record, where this is testimony of both the petitioner and her mother, where it's clear that the reason the FARC was interested in her was because she owned a store and they wanted money, extortion demands. And so the court looked at this and said, okay, this is a reasonable reason for the FARC to want to use this quota or rent, that this is what the FARC does. And as this court clearly held in Zatino v. Holder, this is not a ground for asylum. When that is the motive of the persecutor, to go after money, as opposed to any other reason, then you cannot have an asylum claim based on that. And that's what the board held in this case, and that's supported by substantial evidence. And the second point, and this is the second item of the record, is when the mother admitted that other merchants in the same area, other store owners, other businesses, were also compelled to pay the FARC. It had nothing to do, the FARC was... The FARC was not trying to get money to support their cause, but... Well, that's true. There was evidence, at least in the declaration that's been filed, that the mother was opposed to the FARC. Again, so that's a claim from the mother in her case, in her asylum court, where she's currently in proceedings, as Mr. Diamante said. But we're talking about the petitioner here. Yes, I understand. I know. And we're analyzing whether or not a political opinion was imputed towards her, because the FARC knew that the mother attended these meetings, and therefore she had an opinion. My earlier question was, how old was she, the petitioner, when all this took place? He answered that. If you're a young teenager... No, no, but she wasn't. She was born in 1986. But the FARC was involved with this town for quite a period of time, correct? I'm not sure. Yeah, I'm not sure that there's anything specifically in the record that indicates that. But from what we know about the FARC, they've been around for a long time. Whether or not they've been specific in that town, I don't know that the record establishes that. But regardless, what you started out with, Judge, is whether or not, just because her mother attended a meeting against FARC, that somehow our petitioner here, Ms. Bernal-Gonzalez, has a political opinion that FARC knew about, and therefore persecuted her on account of that political opinion. Those are several steps in the chain where the court has to find, in each case, in favor of the alien. And I would submit to you that there's no record evidence to show that the FARC knew... This sort of relates to the claim that there was ineffective assistance of counsel. Which the government strongly disagrees with. The fact that Mr. Diamante can come up with a different... Strategy in pursuing an asylum claim doesn't mean that the first attorney's strategy is ineffective assistance. So that is the failure of the ineffective assistance claim. There's nothing to show that the prior attorney's conduct as an attorney was so deficient that it affected the outcome of the proceedings. And again, it had nothing to do with the prior attorney, because the immigration judge still considered whether or not she was a member of a particular social group, and whether or not she suffered persecution as a result of that membership. And the immigration judge also considered whether or not she had a political opinion or an imputed political opinion. And these matters, the immigration judge determined that there was no nexus whatsoever to a protected ground. And we would submit to you that the record itself does not compel a contrary conclusion on that. Is there also a requirement that they have to show that the government was unable or unwilling to control the situation? So, Your Honor, that's an issue with respect to the withholding claim. But remember what happened here is with respect to asylum. First, the court found that she didn't meet the one-year bar. And in any case, there was no nexus to a protected ground. So we never had to get into that issue of unable or unwilling to control. But here, what recently happened is the board determined, again, that there was no nexus to a protected ground. And everything that my opposing counsel is stating is there's nothing in the record to compel an opposite result. To the contrary, if you look at those pages that I cited, it's all about extortion. And extortion, pursuant to this court's decision in Zatina v. Holder, is not a ground upon which they may rely. Briefly, just I realize my time is ticking away. Let me ask you another question. Sure. So what do we do with the declaration that she submitted? What do you do with it in what respect? Well, how do we treat it? Because lots of times we see these declarations on motions to reopen. Which specific declaration are you referring to? The one where she describes what happened at the hearing. Oh, with respect to ineffective assistance? Yes. Well, how do you? What she says is that, at least in one part, she says Ms. Suarez and the judge also didn't ask me about the political activities of my father and my mother. Yeah. My father was against the park and set up meetings of a group to unite people against them. Right. The leader of the group and was responsible for organizing their meetings. With my mom's political activities, she was going to meetings in a warehouse near our store. They set up chairs. Right. So what does that mean? So, again, this is a difference in strategy, Your Honor, just because her new counsel says, hey, I see an angle here on political opinion, doesn't mean that her old attorney might have already, whether she asked that or not, she might have thought, you know. If you present the case as pretty much as an extortion case, you've got a tough case. If you present it as satisfying one of the protected grounds, then you can. There's a reasonable basis to do that, that a reasonably competent lawyer would do. But there's nothing to – even if that were the case, and we don't agree with that presumption, that there was another ground here that should have been explored. We don't agree with that because there's absolutely no evidence in the record that political opinion was imputed to this individual. But even if you say that, even if you accept that fact, there's nothing to show that she was prejudiced because there's nothing that would have affected the outcome of the case because both the immigration judge and the board looked at this issue with respect to political opinion. And even with all the new evidence that Mr. Diamante had provided and said, no, we don't see anything here that relates this to political opinion. This is all about extortion, and that does not show a nexus to a protected ground. And just briefly on the one central reason issue, given the fact that the – as I mentioned in footnote two on page 33 of the brief, there was some question about whether this should be remanded as a result of the opinion in Barajas-Romero. And the answer is no, because the board never delved into the legal reasoning of withholding because it did not have to, because under the long-held jurisprudence of this court, if you're unable to prove the requirements of asylum, then by default you're unable to prove the more stringent requirements for withholding a removal. And that's why the one central reason is not an issue. I just wanted to address that since it was in the reply brief. Okay. Thank you very much. Thank you. We ask that the court deny the petition for review. Thank you. I'll have the clerk put a minute up there for you. Thank you, sir. Thank you for giving me an opportunity to do my math. She was about 22 years old when she inherited this store, and her mother came to the United States. So the persecution was the extortion affected the mother, but we have to look at the circumstantial evidence. Council ignores or the government ignores the circumstantial evidence. We have a lot of circumstantial evidence pointing that there was an imputed political opinion. Circumstantial evidence does not lean towards simple criminal stabbing, which she was stabbed, or politically motivated extortion, but rather a systematic operation to persecute a particular family for its opposition, for utilizing murder, stabbing, extortion, death threats. So what do you say in response to the government's argument that the BIA considered the supplemental evidence that you've discussed with respect to imputed political opinion and credited that evidence, found that evidence credible, but still found that there was not a connection between imputed political opinion and her persecution? How do you answer that? Where did the BIA go wrong there? The BIA doesn't really go into detail in explaining this. They do assume that the evidence is credible, but they don't go into detail. They focus on the extortion, and again, this is not just merely an extortion case. The extortion was just one of the methods of persecution that spans, like I say, many years against this family. So this is a mix of family and political opinion or imputed political opinion persecution, and it should be seen that way. And for that reason, the petition should be granted, and the matter should at the very least should be remanded back to the immigration court for the court to do more fact-finding and to make this determination. The attorney obviously didn't present these arguments to the court. The court, unlike what governments are arguing today, did not consider the political opinion aspect of the case. Got it. Thank you.
judges: Kelly, Paez, Bade